IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
DANVILLE DIVISION

| | | |
|---|---|---|
| DONNA BURNOPP | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 4:20CV00052 |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | |
| CARTER BANK & TRUST, | ) | By: Hon. Glen E. Conrad |
| | ) | Senior United States District Judge |
| Defendant. | ) | |

Plaintiff Donna Burnopp has filed an employment discrimination action against Carter Bank & Trust ("Carter") under the Age Discrimination in Employment Act, 29 U.S.C. §§ 621–34 (the "ADEA"). Burnopp also seeks recovery for intentional infliction of emotional distress and negligent infliction of emotional distress. Carter has moved pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss the tort claims and Burnopp's request for punitive damages. The motion has been fully briefed and is ripe for review.

**Background**

Carter first hired Burnopp as a branch manager in December 1987. (Compl. ¶ 9.) Burnopp is now 70 years old. (Id. ¶ 6.) She was promoted several times and was never disciplined throughout her over 30-year tenure there. (Id. ¶¶ 11, 12.) Burnopp ultimately reached the position of Vice President and Regional Operations Manager at Carter. (Id. ¶ 11.)

In May 2019, Carter informed Burnopp it would split her position between three new positions—Delivery Manager, Operations Manager, and Area Manager—as part of a company reorganization. (Id. ¶ 55.) While Carter originally told Burnopp she could pick which of the three positions she preferred, when Burnopp chose the Delivery Manager position, Carter told her it had instead selected an employee nearly 20 years younger and less experienced. (Id. ¶¶ 57–59.) Carter

also filled the remaining positions with younger employees "formerly subordinate" to Burnopp. (Id. ¶ 67.)

Carter then informed Burnopp it would assign her to the newly created "Special Projects" position. (Id. ¶ 61.) Although Burnopp requested a job description for her new position, Carter never furnished one. (Id. ¶ 62.) Additionally, Carter told Burnopp that her position would last only 12–18 months and would prevent her from receiving any future pay raises. (Id. ¶ 63.) Burnopp contends that Carter had no real intention of retaining her in this new position and intended only to induce her to retire, given that Burnopp had never held a job of this type in her over fifty years of work experience. (Id. ¶ 64.) Burnopp did not retire, but she received "little to no work . . . in the short time she was employed in her diminished role." (Id. ¶ 65.)

On July 1, 2019, Carter Senior Vice President Kathy Gravely and Human Resources Director Paul Carney terminated Burnopp and "marched Ms. Burnopp out the front door — in front of the employees and customers she had been servicing for 30 years and humiliating Ms. Burnopp." (Id. ¶ 69.) A regional branch manager then resigned from Carter in July 2019 due to Carter's discriminatory treatment towards Burnopp. (Id. ¶¶ 70, 71.)

Burnopp alleges that "Carter Bank & Trust's conduct towards [her] was discriminatory and intentional, and no business-related legitimate reason justified the harsh actions Carter Bank & Trust took against her." (Id. ¶ 74.) Indeed, Carter's "decision to demote and then terminate Ms. Burnopp's employment was not based upon any legitimate business reasons but was merely a pretext to unlawful age discrimination," she attests. (Id. ¶ 80.) She cites several physical and mental ailments resulting from Carter's mistreatment of her, including "stress and anxiety" and "increased blood pressure, shaking, tremors, crying, depression, fatigue, insomnia, reduced self-

esteem and self-confidence, and other health issues, resulting in the need for ongoing medical treatment." (Id. ¶ 83.)

## Procedural History

Burnopp filed a charge of discrimination with the Equal Employment Opportunity Commission in September 2019. (Compl. ¶ 5.) On June 9, 2020, the EEOC sent Burnopp a Dismissal and Notice of Rights. (Id.) Burnopp then filed the present action on August 31, 2020. Carter did not file an answer, and instead moved immediately to dismiss Counts II–IV of Burnopp's Complaint under Federal Rule of Civil Procedure 12(b)(6). The court held a telephonic hearing on the motion on November 6, 2020.

## Standard of Review

Federal Rule of Civil Procedure 12(b)(6) permits a party to move to dismiss a complaint for failure to state a claim upon which relief can be granted. When deciding a motion to dismiss under this rule, the court must accept as true all well-pleaded allegations and draw all reasonable factual inferences in the plaintiff's favor. Erickson v. Pardus, 551 U.S. 89, 94 (2007). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of [her] entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal citation and quotation marks omitted). To survive dismissal, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570).

**Discussion**

Carter argues that Counts II–IV of Burnopp's Complaint fail to state a claim for relief under Rule 12(b)(6). For the reasons discussed below, the court agrees and will dismiss each claim without prejudice.

**I.      COUNT II: INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

Carter first contends that Burnopp has not satisfied her burden in stating a claim for intentional infliction of emotional distress ("IIED"). IIED claims are disfavored in Virginia and require proof of four elements by clear and convincing evidence: (1) that "the wrongdoer's conduct was intentional or reckless"; (2) that "the conduct was outrageous or intolerable"; (3) that "there was a causal connection between the wrongdoer's conduct and the resulting emotional distress"; and (4) that "the resulting emotional distress was severe." Perdue v. Rockydale Quarries Corp., No. 7:18CV00416, 2019 WL 2216527, at *7 (W.D. Va. May 22, 2019) (Conrad, J.) (quoting Supervalu, Inc. v. Johnson, 666 S.E.2d 335, 343 (Va. 2008)).

To satisfy the "intentional or reckless" conduct element, the plaintiff must show that the defendant "had the specific purpose of inflicting emotional distress" or that "he intended his specific conduct and knew or should have known that emotional distress would likely result." Womack v. Eldridge, 210 S.E.2d 145, 148 (Va. 1974) (emphasis added). For the "outrageous or intolerable" conduct element, to survive a motion to dismiss it is "not enough" for a complaint to describe conduct that is "insensitive and demeaning." Eldib v. Bass Pro Outdoor World, LLC, 654 F. App'x 620, 621 (4th Cir. 2016) (quoting Harris v. Kreutzer, 624 S.E.2d 24, 34 (Va. 2006)). Instead, the conduct alleged in the complaint "must be 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." Id. (quoting Harris, 624 S.E.2d at 33). Thus, "only

4

the most execrable conduct can give rise to the tort." Webb v. Baxter Healthcare Corp., No. 94-1784, 1995 WL 352485, at *5 (4th Cir. June 13, 1995). Lastly, the plaintiff must plead sufficient facts showing a causal connection between the plaintiff's distress and the defendant's wrongful conduct. Russo v. White, 400 S.E.2d 160, 162 (Va. 1991). Liability attaches "only where the distress inflicted is so severe that no reasonable person could be expected to endure it." Id. at 163.

Against this backdrop, the court is constrained to conclude that Burnopp has not stated a claim for IIED. Burnopp has simply not shown in her Complaint that Carter's alleged actions were "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." Harris, 624 S.E.2d at 33. Indeed, this court has dismissed IIED claims in employment discrimination cases alleging arguably much more egregious behavior, including gender discrimination and sexual harassment, see Perdue, 2019 WL 2216527, at *7–9, and verbal racial harassment and discrimination, see Coles v. Carilion Clinic, 894 F. Supp. 2d 783, 786, 796 (W.D. Va. 2012) (Conrad, J.). Here, while the method by which Carter terminated Burnopp may have understandably caused her distress, Burnopp has not plausibly demonstrated that Carter's actions rose to the level of "the most execrable conduct." Webb, 1995 WL 352485, at *5. The court will therefore dismiss Count II without prejudice.

**II.     COUNT III: NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS**

Like IIED claims, negligent infliction of emotional distress ("NIED") claims are also disfavored in Virginia. McClary v. Greyhound Lines, Inc., No. 7:17CV00098, 2017 WL 3725992, at *2 (W.D. Va. Aug. 29, 2017) (Conrad, J.); see also Earley v. Marion, 540 F. Supp. 2d 680, 690 (W.D. Va. 2008) (Jones, J.) ("Virginia courts hold litigants to a rigorous standard for negligent infliction of emotional distress claims. . . ."). However, "[t]he standard for negligent infliction of

emotional distress is <u>even more rigorous.</u>" <u>Michael v. Sentara Health Sys.</u>, 939 F. Supp. 1220, 1234 (E.D. Va. 1996) (emphasis added).  To survive a motion to dismiss, an NIED claim must plead sufficient facts to demonstrate that the plaintiff suffered a physical injury that was "the natural result of fright or shock proximately caused by the defendant's negligence." <u>McClary</u>, 2017 WL3725992, at *2 (quoting <u>Myseros v. Sissler</u>, 387 S.E.2d 463, 464 (Va. 1990)).  A colorable NIED claim must therefore plead "evidence of 'symptoms' or 'manifestations' of <u>physical injury</u>, not merely of an underlying emotional disturbance." <u>Id.</u> (quoting <u>Myseros</u>, 387 S.E.2d at 464.

In <u>Myseros v. Sissler</u>, the Virginia Supreme Court found that the sweating, dizziness, nausea, difficulty in sleeping and breathing, chest pain, hypertension, loss of appetite and weight, and change in heart function, amongst others, constituted the "typical symptoms of an emotional disturbance" and not a physical injury sufficient to make out a claim for NIED.  387 S.E.2d at 466.  Similarly, in <u>McClary v. Greyhound Lines</u>, this court concluded that a plaintiff's "extreme stress" which manifested itself "in the form of physical shaking, interrupted sleep, panic attacks, and altered eating habits" did not satisfy NIED's physical injury requirement.  2017 WL 3725992, at *3.  Instead, the plaintiff's ailments were "more properly classified as symptoms of an underlying emotional disturbance (i.e., stress or anxiety), rather than a physical injury." <u>Id.</u>

Bearing in mind the steep burden Burnopp must overcome, the court concludes that Burnopp has also failed to state a claim for NIED.  Burnopp has demonstrated neither that she suffered a physical injury nor that any negligence on Carter's part harmed her.  Indeed, Burnopp's cited physical and nonphysical ailments appear to align closely with those that both the Supreme Court of Virginia and this court found insufficient to satisfy NIED's "physical injury" element.

See Myseros, 387 S.E.2d at 466; McClary, 2017 WL 3725992, at *3. The court will accordingly dismiss Count III without prejudice.

### III.     COUNT IV: PUNITIVE DAMAGES

Lastly, Carter seeks to dismiss Count IV of Burnopp's Complaint, her claim for punitive damages. "Virginia law imposes a heavy burden on a plaintiff seeking punitive damages." Whitaker v. Hyundai Motor Co., No. 7:17CV00055, 2017 WL 3197243 at *3 (W.D. Va. July 27, 2017) (Conrad, J.). Indeed, "Virginia courts disfavor punitive damages, assessing them 'only in cases involving the most egregious conduct.'" Id. at *4 (quoting Simbeck, Inc. v. Dodd Sisk Whitlock Corp., 508 S.E.2d 601, 604 (Va. 1999)). Specifically, "[a] claim for punitive damages at common law in a personal injury action must be supported by factual allegations sufficient to establish that the defendant's conduct was willful or wanton." Woods v. Mendez, 574 S.E.2d 263, 268 (Va. 2003). Punitive damages are not available for ADEA claims. See Farris v. Lynchburg Foundry, 769 F.2d 958, 967 n.11 (4th Cir. 1985)

Burnopp, however, asserts that a Rule 12(b)(6) motion is not the appropriate vehicle by which to dismiss a punitive damages request. In support, she cites to caselaw from this court refusing to dismiss such a request under the theory that "punitive damages is not a 'cause of action' subject to dismissal under Rule 12(b)(6)." Charles v. Front Royal Volunteer Fire & Rescue Dep't, Inc., 21 F. Supp. 620, 631 (W.D. Va. 2014) (Urbanski, J.). However, this court has also dismissed a claim for punitive damages on a Rule 12(b)(6) motion where the plaintiff did not allege "facts that could plausibly give rise to punitive damages." Whitaker, 2017 WL 3197243, at *4. Here, Burnopp has not alleged facts that could support an award for punitive damages. Because Burnopp

has failed to state a claim for IIED or NIED and punitive damages are not available under the ADEA, the court will grant the defendant's motion to dismiss Count IV.[1]

### Conclusion

For the reasons stated, the court grants Carter's motion and dismisses Counts II–IV of the Complaint without prejudice.

The Clerk is directed to send copies of this memorandum opinion and the accompanying order to all counsel of record.

DATED: This  23rd  day of November, 2020.

                                                Senior United States District Judge

---

[1] If, however, discovery provides a factual basis tending to support a request for punitive damages, Burnopp may move to amend her complaint.